UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LISA M. HOLSTINE,

                     Plaintiff,

       v.

CAROLYN COLVIN, Acting
Commissioner of Social Security,

                Defendant.

CASE NO. C14-5822 BHS

ORDER AFFIRMING DENIAL
OF BENEFITS

**I. BASIC DATA**

Type of Benefits Sought:

    ( X ) Disability Insurance

    ( ) Supplemental Security Income

Plaintiff's:

    Sex: Female

    Age: 50 (at the time of first hearing)

Principal Disabilities Alleged by Plaintiff: obesity, lumbar degenerative disc disease, affective disorder, anxiety disorder, personality disorder, and polysubstance abuse

Disability Allegedly Began: January 1, 2008

Principal Previous Work Experience: plywood grader (light, semi-skilled, with an SVP of 3), hostess (light, semi-skilled, with an SVP of 3), telemarketer (sedentary, semi-skilled,

with an SVP of 3), cashier (light, unskilled, with an SVP of 2), and dining room attendant (medium, unskilled, with an SVP of 2)

Education Level Achieved by Plaintiff:  GED and two years of community college

## II. PROCEDURAL HISTORY—ADMINISTRATIVE

Before Administrative Law Judge ("ALJ"):

     Date of Hearing: December 18, 2012

     Date of Decision: February 6, 2013

     Appears in Record at: AR 15–38

     Summary of Decision:

        The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).
        After careful consideration of the entire record, I find that, based on all of the impairments, including the substance use disorders, the claimant has the residual functional capacity to lift and/or carry 10 pounds occasionally, and less than 10 pounds frequently; to stand and/or walk about two hours total during an eight hour workday; and to sit about six hours total during an eight hour workday. She must be allowed to alternately sit and stand throughout the workday. She can perform unskilled work (work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time) where supervision is simple, direct, and concrete; interpersonal contact with coworkers is incidental to the work performed, e.g. assembly work, but not at assembly line or production line speeds; she will have no contact with the general public; and she will need frequent unscheduled work breaks and work absences. In other words, she can perform less than the full range of "sedentary" work. (20 CFR 404.1567(a) and 416.967(a)).
        The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
        Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

1    If the claimant stopped the substance use, the remaining limitations
2    would cause more than a minimal impact on the claimant's ability to
     perform basic work activities; therefore, the claimant would continue to
     have a severe impairment or combination of impairments.

3            If the claimant stopped the substance use, the claimant would not
4    have an impairment or combination of impairments that meets or medically
     equals any of the impairments listed in 20 CFR Part 404, Subpart P,
     Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5            If the claimant stopped the substance use, considering the claimant's
6    age, education, work experience, and residual functional capacity, there
     would be a significant number of jobs in the national economy that the
     claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and
7    416.966).

8            The substance use disorder is a contributing factor material to the
     determination of disability because the claimant would not be disabled if
     she stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g)
9    and 416.935). Because the substance use disorder is a contributing factor
     material to the determination of disability, the claimant has not been
10   disabled within the meaning of the Social Security Act at any time from the
     alleged onset date through the date of this decision.

11

12   Before Appeals Council:

13   Date of Decision: March 18, 2014

14   Appears in Record at: AR 1–4

15   Summary of Decision: Denied review

16              **III. PROCEDURAL HISTORY—THIS COURT**

17   Jurisdiction based upon: 42 U.S.C. § 405(g)

18   Brief on Merits Submitted by ( X ) Plaintiff   ( X ) Commissioner

19                    **IV. STANDARD OF REVIEW**

20           Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's

21   denial of Social Security benefits when the ALJ's findings are based on legal error or not

22   supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

ORDER - 3

1   1211, 1214 n.1 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than

2   a preponderance, and is such relevant evidence as a reasonable mind might accept as

3   adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

4   *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for

5   determining credibility, resolving conflicts in medical testimony, and resolving any other

6   ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

7   While the Court is required to examine the record as a whole, it may neither reweigh the

8   evidence nor substitute its judgment for that of the ALJ.  *See Thomas v. Barnhart*, 278

9   F.3d 947, 954 (9th Cir. 2002).  "Where the evidence is susceptible to more than one

10  rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion

11  must be upheld."  *Id.*

12              **V. EVALUATING DISABILITY**

13          The claimant, Lisa Marie Holstine ("Holstine"), bears the burden of proving she is

14  disabled within the meaning of the Social Security Act ("Act").  *Meanel v. Apfel*, 172

15  F.3d 1111, 1113 (9th Cir. 1999).  The Act defines disability as the "inability to engage in

16  any substantial gainful activity" due to a physical or mental impairment which has lasted,

17  or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C.

18  §§ 423(d)(1)(A), 1382c(3)(A).  A claimant is disabled under the Act only if her

19  impairments are of such severity that she is unable to do her previous work, and cannot,

20  considering her age, education, and work experience, engage in any other substantial

21  gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also*

22  *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

1    The Commissioner has established a five-step sequential evaluation process for

2    determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R.

3    §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through

4    four.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At

5    step five, the burden shifts to the Commissioner.  *Id.*

6                            **VI. ISSUES ON APPEAL**

7    1.    Does application of Social Security Ruling ("SSR")13-2p render the ALJ's
           decision that without drug and/or alcohol abuse ("DAA"), the claimant
8          would not be disabled, without a legal basis?

9    2.    Is it error for an ALJ to contradict a consulting medical expert about
           whether a claimant's mental conditions meet or equal a listing using the
10         same information as did the consulting medical expert?

11   3.    Did the ALJ err by failing to properly assess the opinion of Dr. Vaught in
           view of his examination findings and the associated medical evidence in the
12         record, and substitute his own judgment for one of Dr. Vaught's findings?

13   4.    Did the ALJ err by failing to properly credit the functional assessment of
           treating pain doctor, Dr. Rick Coleman, M.D.?

14
     5.    Did the ALJ fail to give reasons germane to each witness to reject the
15         evidence from the lay witnesses?

16   6.    Did the ALJ fail to properly evaluate claimant's credibility and fail to give
           clear and convincing reasons for finding Holstine not credible?

17
     7.    Did the questions asked of the VE by the ALJ fail to include all relevant
18         limitations, rendering the testimony of the Vocational Expert ("VE") not
           substantial evidence and is the testimony of the VE at step 5 that the
19         claimant is capable of performing the job of surveillance system monitor
           defective?

20

21

22

1
## VII. DISCUSSION

2
**A.      SSR 13–2p**

3        An otherwise disabled individual is not entitled to disability benefits under the Act

4   if DAA is a contributing factor material to the Commissioner's determination that the

5   individual is disabled. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); *see also Parra v.*

6   *Astrue*, 481 F.3d 742 (9th Cir. 2007); SSR 13-2p, 2013 WL 621536.  If a claimant is

7   found disabled and there is medical evidence of a substance use disorder, the ALJ must

8   determine if the substance use disorder is a contributing factor material to the

9   determination of disability.  *Id*. at *2.  In making this determination, the ALJ must

10  evaluate the extent to which the claimant's mental and physical limitations would remain

11  if the claimant stopped the substance use.  *Bustamante v. Massanari*, 262 F.3d 949, 955

12  (9th Cir. 2001).  If the remaining limitations would not be disabling, the substance use

13  disorder is a contributing factor material to the determination of disability.  *Id*.  Plaintiff

14  bears the burden of proving her substance use is not a contributing factor material to the

15  finding of disability.  *Parra*, 481 F.3d at 748; SSR 13-2p at *4.

16       In this case, Holstine's position on this issue is confusing at best.  First, she fails to

17  recognize that she bears the burden of persuasion on this issue.  Second, she fails to

18  clarify whether she objects to the ALJ's decision as contrary to law or because there is a

19  lack of evidence in the record to support the conclusion.  With regard to the former, SSR

20  13-2p is a valid legal rule, and Holstine has failed to show that the ALJ erroneously

21  applied the rule.  With regard to the latter, Holstine fails to show that the ALJ's

22  conclusion is not supported by substantial evidence in the record.  In fact, the ALJ

1  canvassed the medical evidence and thoroughly supported his conclusion.  AR 27–36.

2  The opinion speaks for itself, and Holstine's position is without merit.  Therefore, the

3  Court denies Holstine's claim on this issue.

4  **B.     Listings 12.04 & 12.09**

5          Holstine argues that the ALJ erred when he rejected a medical expert's opinion

6  that Holstine met disability listings 12.04 and 12.09.  Dkt. 26 at 8–9.  Dr. Barbara Felkins

7  "opined that the claimant's affective mood disorder, in combination with her

8  polysubstance abuse, is of the severity to meet listings 12.04 and 12.09, but that in the

9  absence of ongoing substance abuse, she would not meet or equal a listing."  AR 24.  The

10 ALJ, however, did not accept Dr. Felkins's first conclusion that, with the polysubstances

11 abuse, Holstine met listings 12.04 and 12.09.  AR 25.  Even if this was error, it was

12 harmless error.  *Molina v. Comm'r*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("an ALJ's error

13 is harmless where it is inconsequential to the ultimate nondisability determination.").

14 The ALJ's ultimate conclusion was based on Holstine's abilities in the absence of

15 substance abuse, and Holstine has failed to show that any error regarding her abilities

16 with substance abuse undermines the ultimate disability determination without substance

17 abuse.  Therefore, the Court denies Holstine's claim on this issue.

18 **C.     Weighing Medical Evidence**

19         Holstine argues that the ALJ erred when he rejected a portion of Dr. Larry

20 Vaught's opinion and when he failed to fully credit Dr. Rick Coleman's functional

21 assessment.  Dkt. 26 at 8–13.

22

1    "In order to discount the opinion of an examining physician in favor of the opinion

2    of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons

3    that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d

4    1462, 1466 (9th Cir. 1996).

5        In this case, the ALJ rejected the opinion of an examining physician in favor of a

6    nonexamining physician.  On October 18, 2011, Dr. Vaught conducted a mental status

7    examination of Holstine.  AR 807.  For the examination, Holstine self reported that she

8    uses a drug "Norco" for pain and that she "occasionally" drinks alcohol.  AR 811.  Dr.

9    Vaught opined that Holstine had marked limitations in her ability to interact appropriately

10   with the public and in her ability to interact appropriately with supervisors.  AR 809.  Dr.

11   Vaught also opined that Holstine's limitations would not change if Holstine totally

12   abstained from substance abuse and alcohol.  *Id*.

13       On the other hand, Dr. Felkins reviewed the medical evidence, including Dr.

14   Vaught's report, and opined that Holstine's difficulties with maintaining social

15   functioning are marked with substance abuse and moderate without substance abuse.  AR

16   820.  Dr. Felkins specifically discounted Dr. Vaught's opinion on social functioning

17   because Dr. Vaught did "not seem to be aware of [Holstine's] ongoing severe substance

18   abuse."  AR 823.  Dr. Felkins opined that Holstine's "[a]nger issues may be related to

19   substance abuse" and that Holstine was "still getting pain meds and benzodiazepines

20   without a specific diagnosis and still drinking."  *Id*.

21       Upon reviewing the medical evidence, the ALJ gave "Dr. Vaught's opinion great

22   weight, because it is well-supported by the medical evidence as a whole, including Dr.

1    Vaught's own observations and mental status examination results."  AR 25.  The ALJ,

2    however, discounted one portion of Dr. Vaught's opinion noting that

3            observations on repeat mental health treatment notes do not support Dr.
             Vaught's opinion as to "marked" limitations dealing with supervisors,
4            because she was noted to be friendly and cooperative when she is off drugs
             and stabilized on psychotropics.

5
     *Id*.  This is a specific and legitimate reason to reject Dr. Vaught's opinion as to the
6
     severity of Holstine's social limitations.  Moreover, the reason is supported by substantial
7
     evidence in the record because there are numerous medical reports in the record that
8
     show that when Holstine is not using drugs or drinking alcohol she was "friendly and
9
     cooperative.  AR 20 (citing Exhs. 7F and 14F).  Therefore, the Court denies Holstine's
10
     claim on this issue.
11
             With regard to Dr. Coleman, Holstine argues that the ALJ failed to properly credit
12
     the doctor's functional assessment.  Dkt. 26 at 10–13.  Opinions of treating doctors
13
     should be given more weight than the opinions of doctors who do not treat the claimant.
14
     *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the treating doctor's opinion is
15
     not contradicted by another doctor, it may be rejected only for "clear and convincing"
16
     reasons supported by substantial evidence in the record.  *Id*.  The ALJ rejected Dr.
17
     Coleman's functional assessment of Holstine's physical limitations as follows:
18
             On August 3, 2011, Dr. Boyce R. Coleman, M.D., the claimant's
19           treating pain management physician, completed a medical source statement
             in which he opined that the claimant can lift and/or carry five pounds; stand
20           and/or walk 30 minutes at a time for a total of less than two hours of an
             eight hour work day; and sit 30 minutes at a time for less than two hours of
21           an eight hour work day. Her ability to push/pull is very limited. She can
             occasionally reach, handle, finger, and feel. She can never climb, balance,
22           stoop, kneel, crouch, or crawl. She has loss of balance, and has

ORDER - 9

1    environmental restrictions with regard to fumes. (Exhibit 25F). I give Dr.
     Coleman's opinion little weight, because the degree of limitation he opined
2    is not consistent with or supported by the repeat findings on examination,
     including his own notes, which indicate she was predominantly within
3    normal limits on examination. In addition, Dr. Coleman noted she was
     stable on her pain medication, which is not consistent with the degree of
4    limitation opined.

5    AR 33–34.  The ALJ concluded that Holstine had

6    the residual functional capacity to lift and/or carry 20 pounds occasionally,
     and 10 pounds frequently; to stand and/or walk about six hours total during
7    an eight hour workday; and to sit about six hours total during an eight hour
     workday. She must be allowed to alternately sit and stand throughout the
8    workday.

9    AR 28.

10        The parties dispute whether the ALJ properly rejected Dr. Coleman's opinion as to

11   functional limitations for clear and convincing reasons supported by substantial evidence

12   in the record.  With regard to reasons for the rejection, the ALJ gave the clear and

13   convincing reasons that the limitations were not consistent with either the medical

14   evidence or Dr. Coleman's own notes.  With regard to the amount of evidence in the

15   record to support these reasons, the record is sufficient.  First, although Dr. Coleman

16   stated that his opinion on Holstine's limitations applied for the period of 2008 to August

17   2011, Dr. Coleman's notes from 2010 state that Holstine had "[n]o muscle or joint pain,

18   weakness, swelling or inflammation" and that there was "[n]o restriction of motion, no

19   atrophy or backache."  AR 568.  Dr. Coleman's opinion of severe limitations is clearly

20   inconsistent with a report of no muscle or joint pain and no restriction of movement.

21        Second, the ALJ provided an explanation of the evidence in the record regarding

22   Holstine's physical limitations.  He stated as follows:

On repeat physical examination, the claimant has been entirely within normal limits with no range of motion limitations. Her grip strength is 5/5, and she is able to perform both gross and fine manipulation. The straight leg raise test is negative bilaterally in both the seated and supine positions. She is grossly intact neurologically, with no sensory or motor deficits. She walks with a broad-based waddling gait, which is safe and stable with appropriate speed. She does not require an assistive device to ambulate. (Exhibits IF, 4F, 7F/ 12, 8F, 9F, 15F, 16F, 17F, 18F, 19F, 20F, 21F, 22F, 23F, 24F, 29F, and 33F). She reported a history of nine concussions. (Exhibit 14F/8). However, there is nothing in the medical evidence of record available to substantiate this report. All of this suggests her symptoms were not as severe as she has alleged.

AR 35–36.  This is substantial evidence to support less restrictive physical limitations.

Therefore, the Court denies Holstine's claim on this issue.

**D.     Lay Witnesses**

An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

In this case, the ALJ gave little weight to the testimony of lay witnesses Penny Canada and Tandie Denson.  AR 34.  Although the ALJ gave numerous reasons to reject this testimony, one reason was that "their statements are not consistent with the medical evidence of record available in its entirety." *Id*.  Under binding precedent, this is a germane reason.  Therefore, the Court denies Holstine's claim on this issue.

**E.     Credibility**

"In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and

1   inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir.

2   2005).  An ALJ may properly discount a plaintiff's testimony based on a lack of

3   truthfulness about substance use.  *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir.

4   1999).

5          In this case, the ALJ found that Holstine was "not credible."  AR 36.  Although

6   Holstine is less than clear as to what specific finding of the ALJ she objects to, the ALJ

7   properly discounted Holstine's testimony.  Specifically, the ALJ stated as follows:

8          [Holstine] says she cannot work due to both psychological and physical
           problems. However, as discussed above in great detail, her problems appear
9          to be substance abuse created. She was not entirely forthcoming as to the
           nature and extent of her substance use. She testified she last used alcohol
10         and morphine in 2010, but told the State Agency mental status examiner in
           October 2011 that she drank occasionally. Treating notes indicate that when
11         she is abstinent and adheres to prescription psychotropic medications, she
           reports greatly improved mental symptoms. Though she testified she no
12         longer takes medications secondary to cost, in June 2012 she told her
           treatment provider, MHSSO, that she was doing fine and her medications
13         were working well. She endorsed she sometimes had "rough nights," but
           that she was feeling better, heard no voices, and had no other problems or
14         side effects.

15   AR 36.  These are clear and convincing reasons to discount Holstine's testimony

16   regarding the severity of her symptoms.  Therefore, the Court denies Holstine's claim on

17   this issue.

18   **F.    Vocational Expert**

19          If a claimant shows that he or she cannot return to his or her previous job, the

20   burden of proof shifts to the Secretary to show that the claimant can do other kinds of

21   work.  *Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1278 (9th Cir.

22   1987).  Without other reliable evidence of a claimant's ability to perform specific jobs,

1    the Secretary must use a vocational expert ("VE") to meet that burden.  *Id*. at 1279.

2    "Hypothetical questions posed to the vocational expert must set out all the limitations and

3    restrictions of the particular claimant, including, for example, pain and an inability to lift

4    certain weights."  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

5            In this case, Holstine argues that the ALJ posed an inaccurate hypothetical to the

6    VE and that she does not qualify for one of the two jobs that the ALJ determined Holstine

7    could perform.  With regard to the latter, the Government argues that even if the ALJ

8    erred in reaching his conclusion as to the job of surveillance system monitor, the other

9    job of cutter and paster represents a significant number of jobs in the national economy.

10   Dkt. 30 at 18.  The Court agrees.  Therefore, the Court denies Holstine's claim on this

11   issue.

12           With regard to the ALJ's hypothetical, the Court concludes that any error was

13   harmless.  While it is true that the ALJ failed to include Holstine's mental limitations of

14   incidental interpersonal contact with co-workers and supervisors (AR 76), Holstine's

15   attorney subsequently clarified the issue.  Specifically, Holstine's attorney asked the VE

16   if a hypothetical person with marked limitations in her ability to interact with supervisors

17   and moderate limitations in her ability to interact with co-workers could perform the job

18   of cutter and paster.  AR 77.  The VE answered that the sedentary position of cutter and

19   paster would still be available for a person with those limitations.  AR 77–78.  Therefore,

20   the Court denies Holstine's claim on this issue.

21

22

ORDER - 13

1

## VI. ORDER

2      Therefore, it is hereby **ORDERED** that the Commissioner's final decision

3 denying Holstine's disability benefits is **AFFIRMED**.

4      Dated this 18th day of August, 2015.

5

6      _____

7      BENJAMIN H. SETTLE
       United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22